N9b3sch1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                        S2 17 Cr. 548 (JMF)

JOSHUA ADAM SCHULTE,

                Defendant.            Trial

------------------------------x

                                      New York, N.Y.
                                      September 11, 2023
                                      10:00 a.m.

Before:

                    HON. JESSE M. FURMAN,

                                      District Judge
                                          -and a jury-
                        APPEARANCES

DAMIAN WILLIAMS
        United States Attorney for the
        Southern District of New York
BY:  MICHAEL D. LOCKARD
        NICHOLAS S. BRADLEY
        DAVID W. DENTON JR.
        Assistant United States Attorneys

CESAR de CASTRO
SHANNON McMANUS
        Attorney for Defendant


Also Present:
                Kayla Collins, Paralegal Specialist
                Kimberly Tabares, Paralegal

1          THE COURT:  Good morning.  I hope you all had a good

2     weekend.  We are here for trial in United States v. Schulte.  I

3     have a few matters to address before we get started with jury

4     selection.

5          Is there anything we should discuss before that?  I

6     know defense counsel is just meeting with Mr. Schulte.  I don't

7     know if there is anything relating to that I need to be aware

8     of or we need to discuss.

9          MR. De CASTRO:  No, nothing relating to the meeting.

10          THE COURT:  A few things.  One, I was advised by

11     e-mail on Friday I think it was that the defense does not plan

12     to call Dr. Kiper, and it has no defense exhibits.

13          Is that correct?

14          MR. De CASTRO:  That's correct.

15          THE COURT:  All right.

16          MR. De CASTRO:  Judge, there is a chance, because the

17     government was -- there is a chance that we would seek to

18     introduce a couple exhibits that the government took off of

19     their list, so I'm trying to figure that out right now.

20     They're government exhibits that they either are choosing not

21     to introduce, and but the minute I know what they are, I will

22     let the government know and the Court.

23          THE COURT:  Meaning they were originally marked by the

24     government, but since have been taken off?

25          MR. De CASTRO:  That's correct.

1          THE COURT:  We don't need to deal with that unless and

2    until you want to do something.  But let counsel know as soon

3    as possible so we can address any issues.

4          MR. De CASTRO:  I will, and I don't think they are

5    controversial in any way.

6          THE COURT:  I also understand that the parties did

7    reach stipulations that were under discussion, so the

8    government's only witnesses will be the Special Agents Evanchec

9    and Spivack and Mr. Berger.  Is that correct?

10          MR. DENTON:  Yes, your Honor.

11          THE COURT:  So I take it, in light of that, my

12    inclination would be to tell the jury, as you know, I think I

13    was overestimating the length of trial, but I think it's safe

14    to say trial will end or I'm inclined to say to them trial will

15    end no later than early next week.  I had been planning to say

16    two weeks, but that seems well in excess of what the trial is

17    likely to be.

18          Is that consistent with your thoughts?

19          MR. DENTON:  Yes, your Honor.  We agree.

20          MR. De CASTRO:  Agreed.

21          THE COURT:  So, as you'll see, the jury questionnaire

22    says two weeks, but I'll tell them orally it's likely to be

23    shorter than that.

24          Two legal issues to discuss or at least flag.  One is

25    the defense filed a letter motion last night seeking to

preclude the government's use or admission of the so-called

child erotica as distinguished from child pornography.  I

certainly appreciate the heads up before the issue came up at

trial, but definitely the kind of thing that I would have

thought could have been raised in the motions in limine and

earlier in the process.  Be that as it may, the defense has

made the argument.

I did some research last night, and as far as I can

tell *Brown*, which is the District Court case from the District

of New Jersey upon which the motion relies in its entirety, is

the only case that I have found that reaches that result.  And

more significantly, at least four circuits, including most

notably the Third Circuit, which is where the District of New

Jersey is, but in a case that the *Brown* court did not cite,

have rejected arguments nearly identical to the one raised

here.

*See, for example, United States v. Croghan*, 973 F.3d

809, 820-21 (8th Cir. 2020); *United States v. Fechner*, 952 F.3d

954, 961 (8th Cir. 2020); *United States v. Rodriguez Fernandez*,

833 Fed.Appx. 803 at 807 (11th Cir. 2020); *United States v.

Caldwell*, 181 F.3d 194 (6th Cir. 1999);  and *United States v.

Vosburgh*, 602 F.3d 512, 538 (3rd Cir. 2010).

So, I guess I'm skeptical just because the *Brown*

decision seems to be dubious in light of the Third Circuit's

law, and more to the point, run against the weight of

1    authority.

2           Having said that, Mr. De Castro's letter raises the

3    404(b) notice issue.  Number one, it's not entirely clear to me

4    it is a 404(b) issue.  In *Rodriguez Fernandez*, for example, the

5    Court held that evidence of child erotica was properly admitted

6    because it was inextricably intertwined with evidence of child

7    pornography.  That may or may not be the case here.  It turned

8    on the facts in that case, and I don't know enough about the

9    facts here to know whether that's a valid argument here.

10          But, even if it is properly considered 404(b)

11   evidence, and that is indeed the theory of admission in most of

12   the cases that I cited, I'm not sure that the notice

13   requirement wasn't met here, given that the government

14   presumably provided notice of its intent to admit these

15   exhibits in its exhibit list and in the exhibits it turned over

16   I think four to six weeks ago, if I remember correctly, and I

17   would cite on that score *United States v. Gohari*, 227 F.Supp.3d

18   313, 318 (S.D.N.Y. 2017), which held that there is no

19   requirement that the government recite the incantation 404(b)

20   in disclosure.  Instead, the government must provide sufficient

21   information to establish the relevance and the probative value

22   of the proffered evidence.

23          Also noted that 404(b) prejudice -- and I don't know

24   if that's the relevant issue here or not, but in any event,

25   404(b) prejudice can be cured with proper instructions, and

1   juries are presumed to follow their instructions.  And at a

2   minimum, I would obviously be prepared to provide a limiting

3   instruction to the jury with respect to the child erotica

4   evidence, that it is not unlawful, is not a crime, and whatever

5   other appropriate instructions are warranted.

6          So, all that is to say I'm skeptical, but Mr. Denton,

7   the government's views.

8          MR. DENTON:  Your Honor, during our research last

9   night and this morning, we identified a number of the same

10  cases your Honor did.  And the weight of authority clearly does

11  suggest that it is permissible to admit it.

12         Two things from a factual perspective here.  I think

13  we do believe here that the evidence is inextricably

14  intertwined.  In many cases, the child erotica was not only

15  located within the same folders that the defendant is charged

16  with also using to possess child pornography, it came from in

17  many respects the same series.

18         Part of the reason we intended to introduce it and

19  part of what Special Agent Spivack will testify about is that

20  in some of these series, where there's a number of photographs

21  or videos of a single individual, some of them will be child

22  pornography and some of them will be child erotica.  And that

23  that is not a hugely important distinction for the marketplace

24  for those types of images, but it is something that is

25  significant for him.

1          Relatedly, and I think this goes to the concern

2     animating *Brown*, whether supported by authority or not, part of

3     the testimony that we expect to elicit is to expressly draw the

4     distinction between child pornography and child erotica.

5     Special Agent Spivack will testify, as we forecast at the final

6     pretrial conference, about what some of his experience and

7     methodology is in identifying which category images and videos

8     should be put into.

9          Moreover, in terms of the presentation of the

10    evidence, both in Special Agent Spivack's presentation and in

11    the exhibits containing the images, Government Exhibits 1001

12    and 1002, we have separated the images that have been

13    identified as child pornography from those that are identified

14    as child erotica.  We have no objection to whatever limiting

15    instructions the Court thinks are appropriate.  But, in no case

16    will the government be asking or suggesting that the jury

17    should somehow draw some conclusion from the child erotica,

18    other than the fact of its presence together with the images

19    that the government expects to show were illegal.  So I don't

20    think that we have confusion issue that seems to be animating

21    the concerns in *Brown*.

22         Like I said, we have no qualms about whatever the

23    Court thinks is necessary in terms of instructions to the jury.

24    But given the weight of authority and those measures, we think

25    it is appropriate to admit it here.

1    THE COURT:  And to the extent it is properly analyzed

2  as a 404(b) issue, your thoughts on the notice front.

3    MR. DENTON:  We have given adequate notice, your

4  Honor.  Separate and apart from the production of exhibits and

5  exhibit lists, we have been producing drafts of the

6  presentation that Special Agent Spivack will use to illustrate

7  his testimony for several weeks now, which draw this

8  distinction.  We obviously discussed it at the final pretrial

9  conference on Wednesday.

10    Again, I think it is unclear that this really does

11  fall under 404(b), both for the factual sort of intertwining,

12  but also it is not entirely clear how 404(b) analysis applies

13  to conduct that is not illegal, not charged, not chargeable.

14  But be that as it may, we think we've given proper notice here

15  as well.

16    THE COURT:  I think 404(b) clearly does apply.  It is

17  not limited to other crimes.  It is also wrongs acts, so it

18  does apply.  It can apply outside the context of other illegal

19  conduct.

20    But in any event, Mr. De Castro, let me just flag that

21  my understanding is that within the next few minutes we will

22  start to or we'll have our jury pool, so when we do, we'll

23  start promptly with jury selection and cease whatever

24  discussions we are having.  But until then, we'll make use of

25  whatever time we have.

1          Mr. De Castro.

2          MR. De CASTRO:  Thank you.  Just briefly.  So, on the

3    issue of factually being inextricably intertwined, the fact

4    some of this material is within the same folders or area, first

5    of all, a lot of what the government just argued, my response

6    to that is, okay, well, there is no use for them.  They don't

7    want the jury to draw any conclusions from it, and it really

8    doesn't matter since it is not criminal.  Why are we doing it.

9          And my view is they want to do it because it's 13,000

10   versus the 3,000.  But there is 3,000, they have evidence of

11   3,000 pieces that they have designated as child pornography.

12   Why are we even doing this.  If anything, it is just

13   prejudicial.  It boosts this number so that the jury is sitting

14   there saying it is really 16,000 versus 3,000.  We're still in

15   the thousands.  I don't really see the reason for it.

16          In terms of notice, first I would have expected this

17   to be in, like the cases that I've identified, all those cases

18   too, in the government's motions in limine, when they could

19   have moved under 404(b).  Did we know back then?  I don't think

20   so.  And the reason why is because we've always been on sort of

21   on notice that we are talking about child pornography, that

22   they were not necessarily -- just because they make

23   distinctions doesn't mean they want to introduce the child

24   erotica.  Just because they say there is child erotica in a

25   spreadsheet, with thousands of other documents, doesn't mean

1  they are trying to introduce it.  That's the point of the

2  notice is to say, hey, just so you know, we don't want to just

3  put in this 3,000, we want to tell the jury there is 13,000

4  others, and this is how I make my distinctions, and that really

5  has come to light more recently in the drafts of the

6  presentations.

7  And I might have been able to bring this to the

8  Court's attention right after the pretrial conference, but I

9  spent hours and hours waiting at the MDC doing nothing so I

10  could finally see my client.  So I have that problem.

11  And so, those are the two points I have.

12  THE COURT:  Mr. Denton, do you want to spell out for

13  me what the probative value or relevance is, that is to say

14  what the agent's testimony would be or why the distinction is

15  important.

16  MR. DENTON:  So, yes, your Honor.  I think first of

17  all, there is simply the factual testimony about what was found

18  as a result of searching these particular locations.  And I

19  think here, in particular, there is relevance because as is

20  common when we end up in discussions about 404(b) or analogies

21  to 404(b), the defendant has rested his case on his knowledge

22  on the knowledge and intent.  So the circumstances in which the

23  material was found, what it was found with, what comprised

24  these encrypted containers, is relevant.

25  Also, however, like I said, we want to be precise in

N9b3sch1

1    Special Agent Spivack's testimony that when he says I

2    identified 3,000 images of child pornography, there is going to

3    be in evidence file listings from those containers.  We think

4    it is necessary, so the jury doesn't hear him say I identified

5    X, and then they see a file listing that's completely

6    different, that they have some explanation for what that

7    distinction is and why.

8            Finally, I think it also goes to some of Special Agent

9    Spivack's expert testimony about the collection, transmission,

10   and distribution of series like we've talked about.

11           The one thing that it is not being used for, we don't

12   think it has any probative value for, is to show the

13   defendant's propensity or character or acting in conformity

14   with a particular trait.  We're not suggesting he possessed

15   child erotica on some other occasion, and therefore he

16   possessed this child pornography.  That's not its purpose.

17           Its purpose is to simply illustrate what was kept

18   together in a single place under single passwords, and that

19   explains both some of the expert methodology and the forensic

20   methodology of what was found there.

21           THE COURT:  Thank you both.

22           The motion is denied on the basis of the authority

23   that I cited, number one.  Sounds like the facts here are quite

24   similar to the facts in *Rodriguez Fernandez* in which the 11th

25   Circuit held that evidence was properly admitted as

1    inextricably intertwined.

2           Even if that's not the case, I do think it is

3    admissible for several permitted purposes under 404(b) --

4    intent, knowledge, absence of mistake -- which are central to

5    the issues in dispute at this trial.

6           To the extent that 404(b) requires notice, I think the

7    spirit if not the letter of the rule was satisfied for the

8    reasons that we have discussed.

9           And I think the fact that there were 13,000 or 14,000,

10   I would note a couple things.  One, I'm prepared to give a

11   limiting instruction which would limit any prejudice and would

12   ask that you confer and the defense propose one.  Number two,

13   as the Court held in *United States v. Mercer-Kinser*, 2021 WL

14   3510972, I'm not sure what page number it is.  But in any

15   event, rejected an argument similar to -- page 2 -- an argument

16   similar to that here, and found unpersuasive that there would

17   be any prejudice given that the charged crimes are child

18   pornography, which are more serious and inflammatory than child

19   erotica.  That is true here as well.

20          And lastly, to the extent that Mr. De Castro focuses

21   on the number of images, that is to say it inflates the number,

22   I think that is highly probative of the intent, knowledge, and

23   absence of mistake here.  That is to say, Mr. Schulte's claim

24   is he inadvertently downloaded these files.  The fact he

25   downloaded 17,000 or 16,000 files, whatever the case may be, I

N9b3sch1

 1    think is highly probative of that issue.  So, for those

 2    reasons, the motion is denied.

 3         I would ask that you confer about a proposed limiting

 4    instruction and provide it to me sooner rather than later so I

 5    can resolve any disputes on that front.

 6         At the final pretrial conference, we'd also discussed

 7    appropriate language for when the images are shown to the jury.

 8    I don't know if you've discussed that, but again, on both those

 9    issues, if you can confer sooner rather than later, and provide

10    me with either agreed-upon language or different proposals,

11    that would be great.

12         As long as we don't have the jury here yet, I wanted

13    to flag one other issue that we came across in preparing the

14    jury instructions.  The government has requested that the

15    verdict form include, or that the jury be asked to make a

16    special finding with respect to Count Two, use the new

17    enumeration, with respect to Count Two, the possession charge.

18    A special finding concerning whether the images involved -- I

19    want to get the language exactly right.  Involved a minor who

20    had not yet reached the age of puberty or was less than 12

21    years old.  I assume that is based on the enhanced penalties

22    that are set forth in 2252A(b)(2).

23         Couple issues I wanted to flag.  Number one, it's not

24    clear to me it is properly charged in this case.  There is

25    nothing in Count Two, as far as I can tell, aside from the

1    statutory citation, that includes that element.  It does strike

2    me that that finding is an element of the offense under

3    *Apprendi* and its progeny.  That is to say, to the extent that

4    fact increases the statutory maximum penalty, I think it needs

5    to be charged in the indictment and found beyond a reasonable

6    doubt by the jury.

7          I would cite on that, aside from *Apprendi* and its

8    progeny, the Sand instructions which do seem to view it as an

9    *Apprendi* issue, and *United States v. Soto*, 58 F 4977, 982 (8th

10   Cir. 2023), finding it is an element of the offense under

11   *Apprendi*.

12         In light of that, I'm not sure it is properly in this

13   case, unless I'm missing something.  I don't see any language

14   in Count Two, other than the statutory citation that pertains

15   to it, and the Second Circuit has long held that the statutory

16   citation alone does not suffice to charge an element of the

17   offense.  *United States v. Gonzalez*, 686 F.3d 122, 130-33 (2d

18   Cir. 2012); *United States v. Doe*, 297 F.3d 76, 85 (2d Cir.

19   2002).

20         Given that, I'm inclined to think it is not properly

21   charged in this case, and therefore should not be submitted to

22   the jury or appear on the verdict form.  But, I'm putting you

23   on notice of the issue so you can look into it and we can

24   address it.

25         Two other things to flag on this front, but would only

be relevant if it is proper to include this at all.  Number

one, I gather that the enhanced penalty provision was added to

the statute by amendment in 2012.  The offense here is charged

in 2009 to 2017, which is to say it spans the period of the

amendment.  I would think, therefore, that if the enhanced

penalty provision is included in the jury's instructions, that

the jury would need to be instructed that it has to base that

finding solely on possession of materials on or after the

effective date of the amendment.  So, that's one thing to flag,

and we should discuss that if it is properly included at all.

Second, Sand notes that it is "not clear whether" the

enhancement includes any scienter or mens rea requirement.

Sand notes that the language was modeled after language in the

guidelines, and at least two circuits, the Fifth and 11th

Circuits, have held that the guideline provision includes some

sort of scienter element, but at least district court has held

that the statute does not include a scienter element.  *See*

*United States v. Gray*, 2021 WL 2026929 at *1.  It says Sixth

Circuit, but I'm not sure it is Sixth Circuit.  Maybe it is the

6th Circuit.  I'll get the correct citation.

Again, those issues would be moot if it is not

properly included at all.  But, you should be prepared to

address it if it is properly included.  Any questions or issues

on that front, and let me give you the correct citation.  It is

actually 2020 WL 2308443 at *3-4 (N.D. Ohio, May 8, 2020).  The

N9b3sch1

1    citation I gave you a moment ago is a Sixth Circuit decision

2    that actually vacated that decision for lack of jurisdiction.

3    So, in that regard it's not particularly good authority, but

4    perhaps its reasoning is sound.  And in either case, it is not

5    binding on me.  That's really to flag the issue for you to

6    think about, look into it.

7            I suppose the first question is whether the government

8    adheres to its view it should be included in the jury's

9    instructions and the verdict form.  If not, then everything

10   else is moot.  But, anything to discuss at the moment,

11   Mr. Denton?

12           MR. DENTON:  Not at the moment, your Honor.  I think

13   we'll take a look at it and be prepared to address it and see

14   if we can confer with defense counsel if necessary.  But we'll

15   be prepared to take it up with the Court.

16           THE COURT:  Great.

17           Mr. De Castro, I assume nothing at this time on that?

18           MR. De CASTRO:  Judge, thank you.  We'll do the same.

19           THE COURT:  Anything else?  I think that finishes what

20   I needed to cover.  We don't have our jury pool but I'm hoping

21   and assuming they'll be here any minute.

22           Anything else from the government?

23           MR. DENTON:  No, your Honor.

24           MR. De CASTRO:  Nothing from us, Judge.

25           THE COURT:  Who is opening for each side?

1          MR. DENTON:  Mr. Lockard will be opening for the

2     government.

3          MR. De CASTRO:  Mr. McManus for the defense.

4          THE COURT:  How long do you expect the openings to be?

5          MR. LOCKARD:  The government's opening will be 10

6     minutes, maybe a little less.

7          THE COURT:  I don't know if that microphone is on.

8          MR. LOCKARD:  We expect the government's opening will

9     be about 10 minutes.  Maybe a little bit less.

10          MR. McMANUS:  The defense's opening will be about five

11     minutes.

12          THE COURT:  Great.  And can the government tell us

13     what the witness order is?  There obviously aren't many, but

14     nevertheless.

15          MR. DENTON:  Yes.  It will be Special Agent Evanchec,

16     Special Agent Spivack, and Mr. Berger, in that order.  They're

17     all available to go as needed, so we'll be ready to go one

18     right into the other.

19          THE COURT:  All right.  Great.  So stay tuned and I'll

20     let you know when we expect to have the jury.

21          (Jury selection under separate cover)

22          (Continued on next page)

23

24

25

1          THE COURT:  All right.  At this think that takes care

2     of everybody who has been excused, so ladies and gentlemen,

3     here's what we are going to do now.  I know we've been at this

4     for a while.  I know you've been sitting for a while.  It is a

5     little warmer in here than I would like.  I am going to try to

6     address that for tomorrow.

7          I think because of that, I want to give you a few

8     minutes to use the restroom, stretch your legs, and we will

9     begin with some preliminary instructions by me.  As I will

10    explain as part of those instructions, the first step after my

11    instructions is the opening statements of the lawyers.  I think

12    given that it's somewhat close to the end of the day, because

13    it has been a long day, I am going to exercise my discretion

14    and do that first thing tomorrow morning.  Which is to say I'll

15    give you my instructions today and we'll break for the day, and

16    that way begin fresh tomorrow morning with the parties' opening

17    statements and hearing of the evidence.  But I'll explain to

18    you more on that score in a few minutes.

19         So, here's the drill.  In a moment when I excuse you,

20    you are going to go not out of that door, that's no longer the

21    door that you are going to use to come in and out of this

22    courtroom.  You are going to follow Ms. Smallman out this door.

23    First of all, watch your step.  You are going to see when you

24    get through that door there is some construction on the

25    elevator going on back there, and as a result you need to kind

1    of squeeze past -- not quite as bad as I just made it sound,

2    but you need to get by some Sheetrock or whatever it's called.

3    So watch your step.  Ms. Smallman will show you into the jury

4    room, which is going to be your home when you're not in the

5    courtroom for the coming days, when you are presiding or when

6    you're sitting as jurors in this case.  She will give you some

7    information that you'll need as jurors.  She'll get some

8    information from you about your contact information, the best

9    way to reach you, etc., so if we need to in the coming days, we

10   have a means to get to you.

11            Once you've done all that, you can stretch your legs,

12   you can use the restroom.  We will come back into the

13   courtroom, but she will bring you in.

14            So henceforth, it is very important that you are not

15   going to come into this courtroom through the door you've been

16   using.  Ms. Smallman will show you how to get to the jury room.

17   You are going to go straight into the jury room in the morning,

18   and when we're ready to proceed, Ms. Smallman will come get you

19   and escort you out.

20            She is going to give you some guidance on the best way

21   to do that, because you are going to sit as jurors, Juror No. 3

22   will become Juror No. 1, Juror No. 4 will be 2 and so on down

23   the line.  You are going to want to walk out in a manner that

24   makes it easy to get into each row.  Ms. Smallman is very good

25   at this and will give you instructions.  But bottom line, Juror

1    No. 6 will want to be the first down row one.  Juror 12 will be

2    the first down row two, and jurors 14 and 13 should go into the

3    third row.

4         Ms. Smallman will explain all of that to you, give you

5    what information you need, and then in about 10 minutes let's

6    commence with my instructions and before I excuse you for the

7    day.

8         So with that, take all your personal belongings with

9    you, and you are excused to go to the jury room.  Ms. Smallman

10   will take you there.  And we will resume in about 10 minutes.

11        In the meantime, couple very important instructions

12   you'll hear me say a lot in the coming days.  Number one, don't

13   discuss the case.  You've heard no evidence whatsoever in this

14   case.  You really don't know anything about it, other than my

15   general description.  But everything I've told you is not

16   evidence, so it is critical you keep an open mind.  It is

17   critical you don't discuss the case with each other or with

18   anyone else for that matter.  It is obviously critical you do

19   no research about the case.

20        With that, enjoy your breaks, and we'll see you in

21   approximately 10 minutes.  Thank you.  And the jurors in the

22   back, you can just make your way through the middle here and

23   follow them out as well.

24        (Jury excused)

25        THE COURT:  You may be seated.  I want to give you a

N9B3SCH1

1  couple minutes' break.  So anything we need to discuss from the

2  government?

3              MR. DENTON:  No, your Honor.

4              THE COURT:  Defense?

5              MR. De CASTRO:  No, your Honor.

6              THE COURT:  Mr. De Castro, just so you know, I did

7  communicate with the marshal himself and he gave me assurances

8  that you'll be given time before the trial day each day and at

9  the end of the trial day to meet with Mr. Schulte.  If you can

10 talk to the deputies to find out the particulars, if that

11 should happen here or over at 500.  I didn't get into that

12 level of detail.  But you want to make sure you know where to

13 go and don't have any hiccups.  But it should not be a problem.

14             MR. De CASTRO:  I already discussed it with them,

15 they're great, so I think I know where to be.

16             THE COURT:  I thank them for their help as well.

17             It is 4:27 so please be ready to go in eight minutes.

18 So as soon as the jury is ready to go, we will resume again

19 just with my instructions, and then we'll break for the the

20 day.  See you then.  Thanks.

21             (Recess)

22             THE COURT:  We've got the jury and I'll proceed with

23 preliminary instructions.  I think it was clear from sidebar,

24 but I take it no objection from either side waiting until the

25 morning to swear the jury?

1    MR. DENTON:  Not from the government, your Honor.

2    MR. De CASTRO:  No, Judge.  I think that's a good

3    idea.

4    THE COURT:  The marshal told me the cell block at 500

5    Pearl.  Is that correct?

6    MR. De CASTRO:  Yes, that's what I understand too.

7    THE COURT:  Great.

8    (Jury present)

9    THE COURT:  You may be seated.  Welcome back, ladies

10   and gentlemen.

11   Just so you know, in case you are not familiar with

12   this process, the reason that everybody rises when you enter

13   the courtroom, is it is out of respect for you as your role as

14   jurors.  Just so you know, when you get to your seat, you're

15   welcome to take it.  But everyone else will remain standing

16   until I tell them they can be seated.

17   Welcome back.  This case is officially on trial.  As I

18   stated earlier, I expect the trial to last no longer than until

19   the early part of next week.  It may end sooner than that.

20   Certainly I'll have more to tell you on that in the next day or

21   two, and we'll keep you apprised as much as I can.

22   Until we get to summations and deliberations, we'll

23   start as close to 9 a.m. as possible, and we will go until

24   2:30 p.m.  When we get to summations and deliberations, I may

25   adjust the schedule a little bit and ask you to stay for a

1   longer day, just to give us more flexibility and help me manage

2   the trial a little bit.  And all of that is to help get you

3   back to your regular lives as quickly as possible.  To help

4   ensure we can start on time, please be in the jury room each

5   morning no later than 8:45 at the latest so we can begin

6   without delay.  I know that some of you are traveling from

7   reasonably far distances.  Others may be relying on public

8   transportation.  Whatever the case may be, please leave enough

9   time to ensure that you get here early and on time and you are

10  in the jury room no later than 8:45 so we can start promptly.

11  Again, one of my goals here, one of my principal goals, aside

12  from giving a fair trial to both sides, is to get you back to

13  your lives as quickly as I can.  But I need you to do your part

14  on that.  we can't start each morning until you are all here,

15  so it is very important that you get here on time to enable us

16  to start on time.  And if you are not here on time, it means we

17  will all have to wait for you.  Not just the parties and the

18  lawyers and me, but also the rest of your fellow jurors.  So

19  please try to avoid that and try to be in the jury room, but no

20  later than 8:45.

21          As an enticement for you to be on time, I've arranged

22  to have some breakfast and coffee delivered to the jury room.

23  As I told you, we will take one half hour break at around 11:30

24  each day until, again, we get to the summations and

25  deliberations, at which point we might have a different

schedule.  Given how short that break is, you won't be able to
go out of the courthouse to get food.  Indeed, you'll really
have to remain in the jury room.  So it is a good idea to bring
a snack or a small lunch to tide you over until the end of the
day.  The food in the morning may also be enough to get you
through, but just out of an abundance of caution, you might
want to bring some light fare.

I also want to stress it's a good idea to use the
bathroom just before you come out to the courtroom each time.
My hope is we can make it through each session without the need
to take breaks for folks to use the restroom.

To be clear, my goal here is not to torture anybody,
and if you are uncomfortable, and certainly if you are having
any trouble concentrating on the evidence, please let me or
Ms. Smallman know, and we'll do what we need to do.  But the
issue is if we take a break for the bathroom, inevitably it
means it is 10 or 15 minutes before we can resume.  And it just
makes it that much more difficult for us to get the trial done
in an efficient manner.

So, once again, my goal is to get you back to your
lives, and, more importantly, to get the case done in an
efficient manner.  So I would ask you to do your part, and if
you can use the bathrooms before you come out, that would
definitely make it much easier.

Now that we are on trial, let me give you some

1    instructions about your duties as jurors.  At the end of the

2    trial, I will give you more detailed instructions, and it is

3    those instructions that will control your deliberations in this

4    case.  But for now let me explain how the trial will proceed.

5         The first step in the trial, which we will begin

6    tomorrow morning first thing, will be the opening statements.

7    The government will make an opening statement.  After that, I

8    expect the lawyer for the defendant to make an opening

9    statement as well.  But the defendant is not required to make

10   an opening statement.  That is because the burden is on the

11   government at all times to prove the defendant guilty of the

12   crimes with which he is charged.  The defendant has no burden

13   whatsoever, and doesn't have to do anything at trial if he

14   doesn't want.

15        These statements, the lawyers' opening statements are

16   not evidence.  They serve no purpose other than to give you an

17   idea in advance of the evidence that the lawyers expect you to

18   hear from the witnesses.  The statements permit the lawyers to

19   tell you a little bit about what the case is about.  But the

20   only evidence comes from the witnesses and the exhibits.

21        After opening statements, the government will present

22   its evidence.  The government's evidence will consist of the

23   testimony of witnesses, as well as documents and exhibits.  The

24   government will examine the witnesses, and then the defendant's

25   lawyer may cross-examine them.  Following the government's

case, the defendant may present a case if he wishes.  Again,

because of the presumption of innocence, the defendant is not

required to offer any proof.  If the defendant does present a

defense case, however, the defense witnesses will testify, and

the government will have an opportunity to cross-examine them.

After the presentation of evidence is completed, the

parties will deliver their closing arguments to summarize and

interpret the evidence.  And just as the parties' opening

statements are not evidence, their closing arguments are not

evidence either.

Following closing arguments, I will give you my

instructions on the law.  Then you will retire to deliberate on

your verdict, which must be unanimous and must be based on the

evidence presented at trial.

Your deliberations are secret.  You will never have to

explain your verdict to anyone.

Under the law as I've mentioned, a defendant is

presumed innocent and cannot be found guilty of a crime unless

a jury, after having heard all of the evidence in the case,

unanimously decides that the evidence proves the defendant

guilty beyond a reasonable doubt of that crime.

In a criminal case, the burden of proof remains on the

prosecution, on the government.  For the jury to return a

verdict of guilty, the government must prove that the defendant

is guilty beyond a reasonable doubt.

1          A person charged with a crime has absolutely no burden

2     to prove that he is not guilty, and if the defendant chooses

3     not to present any proof, that decision cannot be held against

4     him and may not enter into your deliberations at all.

5          I will, however, instruct you fully on the burden of

6     proof after all the evidence has been received.

7          Let me explain now the jobs that you and I are to

8     perform throughout the trial.  I will decide which rules of law

9     apply in this case.  I will decide that by making legal rulings

10    during the presentation of the evidence, and also, as I told

11    you, in giving you the final instructions after the evidence

12    and arguments are completed.

13         In order to do my job, I may have to interrupt the

14    proceedings from time to time to confer with the lawyers about

15    the rules of law that should apply here.  Sometimes we may talk

16    here at the sidebar outside of your hearing as we did during

17    jury selection today.  But some of those conferences may take

18    more time than others, and as a convenience to you, I may

19    excuse you from the courtroom.  I promise you, I think you've

20    gotten the point, that I really try hard to value your time and

21    get you back to your lives as efficiently and quickly as

22    possible.  I promise that I will try to avoid any such

23    interruptions as much as possible.  But, please be patient and

24    understand that those conferences are necessary to ensure the

25    fairness of the trial, and they often help make the trial move

1     faster.

2             While I decide the law that applies to this case, you,

3     the members of the jury, are the triers of fact.  You will

4     weigh the evidence presented and decide whether the government

5     has proved beyond a reasonable doubt that the defendant is

6     guilty of each charge in the indictment.  You must pay close

7     attention to all of the evidence presented, and you must base

8     your decision only on the evidence in the case and any

9     instructions about the law.

10            As I've said a few times, and will say many times

11    before the case is over, many more times before the case is

12    over, your decisions in this case must be based solely on the

13    evidence that you see and hear during the trial.

14            What, then, is evidence?  Evidence consists only of

15    the testimony of witnesses, documents, and other things that

16    are admitted as evidence or stipulations agreed to by the

17    parties.  Some of you probably have heard the term

18    "circumstantial evidence" and "direct evidence."  Do not be

19    concerned with these terms.  You are to consider all of the

20    evidence given at this trial.

21            Certain things, however, are not evidence and must not

22    be considered by you.  The following is a list of what is not

23    evidence:  First, arguments, statements, and questions by the

24    lawyers are not evidence.  Nor are any statements that I have

25    made to now or statements that I make hereafter or questions

1    that I ask of a witness.

2           Second, objections to questions are not evidence.  The

3    lawyers have an obligation to make an objection when they

4    believe that evidence being offered is improper under the rules

5    of evidence that govern at this trial.  You should not be

6    influenced by an objection or by my rulings on an objection.

7    If an objection is sustained, you should ignore the question

8    and any answer that may have been given.  If an objection is

9    overruled, you should treat the answer to the question as you

10   do any other.  If you are instructed that some item of evidence

11   or testimony is received for a limited purpose only, you must

12   follow that instructions as you must follow all of my

13   instructions as to the law.

14           Third, testimony that I exclude or tell you to

15   disregard is not evidence and must not be considered.

16           And fourth, anything that you have seen or heard

17   outside of the courtroom is not evidence and must be

18   disregarded.  You are to decide the case solely on the evidence

19   presented here in the courtroom.

20           There is no formula to evaluate testimony or exhibits.

21   For now, suffice it to say that you bring with you into this

22   courtroom all of the experience and background of your lives.

23   Do not leave your common sense outside the courtroom.  The same

24   types of tests that you use in your every day dealings are the

25   tests that you should apply in deciding how much weight, if

1    any, to give to the evidence in this case.

2         The law does not require you to accept all of the

3    evidence admitted at trial.  In determining what evidence you

4    accept, you must make your own evaluation of the testimony from

5    each of the witnesses and the exhibits that are received in

6    evidence.  It is essential, however, that you keep an open mind

7    until you have heard all of the evidence in the case.  The case

8    can be presented only step by step, witness by witness, before

9    all evidence is before you.  As you know from experience, you

10   can hear one person give his or her version of an event and

11   think it sounds very impressive or even compelling, and yet,

12   upon hearing another person's version of that same event or

13   even the same person cross-examined with respect to the same

14   event, things may seem very different.  In other words, there

15   may be another side to any witness's story.

16        You should use your common sense and good judgment to

17   evaluate each witness's testimony based on all of the

18   circumstances.  Again, I cannot emphasize too strongly that you

19   must keep an open mind until the trial is over.  You should not

20   reach any conclusions until you have all the evidence before

21   you.

22        Under your oath as jurors, you are not to be swayed by

23   bias or sympathy.  All of us, no matter how hard we try, tend

24   to look at others and weigh what they have to say through the

25   lens of our experience and background.  We each have a tendency

1    to stereotype others and make assumptions about them.  Often we

2    see life and evaluate evidence through a clouded filter that

3    tends to favor those like ourselves.  You must do your best, do

4    the best you can to put aside such stereotypes, for all

5    litigants, all witnesses, are entitled to a level playing field

6    in which we do the best we can to put aside our stereotypes and

7    prejudices.  You are to be guided solely by the evidence in

8    this case and my instructions about the law.

9           Finally, let me caution you about certain rules and

10   principles governing your conduct as jurors in this case.  I

11   told you some of this earlier, but let me make sure I repeat it

12   because it's important.  First, you must not talk to each other

13   about this case or about anyone who has anything to do with it

14   until the end of the case when you go into the jury room to

15   decide on your verdict.  The reason for this requirement -- and

16   it is an important one -- is you must not reach any conclusion

17   on the charges until all of the evidence is in.  As I have

18   said, keep an open mind until you start your deliberations at

19   the end of the case.  And part of the reason for the rule that

20   you shouldn't talk to each other about the case is to ensure

21   you continue to keep an open mind until the time of your

22   deliberations are to start.

23          Second, do not communicate with anyone else about this

24   case or with anyone who has anything to do with it until the

25   trial has ended and you have been excused as jurors.  Anyone

1    else includes members of your family, your friends, your

2    employers, your colleagues, anyone.  And no communicating means

3    no communicating on Facebook, Twitter, Google, Snapchat,

4    Instagram, blogs, in person, by text, phone, whatever.  At all.

5    You may tell your family, your boss, that you are a juror in a

6    federal criminal case.  But please do not tell them anything

7    else about it until you have been excused by me.  You may think

8    that tweeting something about the case or posting something

9    about it on Facebook is harmless and won't make a big deal, but

10   I assure you it is, and if you do anything like that, it will

11   be a major headache to everyone involved in the trial,

12   including you.  So don't do it.

13           Third, it is possible, though not necessarily likely,

14   this trial may be covered by the media or people may talk about

15   it.  From this moment on, you, as jurors, must not pay any

16   attention to outside information or commentary about this case,

17   whether it is in the newspapers, on TV or radio, or on the

18   internet.  You must ignore even the comments and opinions of

19   your family and friends.  Nor may you discuss the case or

20   anyone or anything having to doing with it with anyone else,

21   including your family members and your potential fellow jurors,

22   until I have discharged you as a juror.  This means that you

23   must not speak to anyone, as I've said.  You must not read or

24   listen to anything about this case from any source.  If you do

25   happen to hear anything about it on TV or the radio or see

1    anything online about it, close your browser, turn off the TV,

2    turn off the radio, change the channel, whatever the case may

3    be.

4         I am not saying that's likely, but it is important

5    that you take steps not to remain in the presence of anyone who

6    may be discussing the case

7         Fourth, do not let anyone talk to you about the case

8    or about anyone who has anything to do with it.  If any person

9    should attempt to communicate with you about this case at any

10   time throughout the trial, either in or out of the courthouse,

11   you must immediately report that to my staff, either

12   Ms. Smallman or my law clerk Mr. Miller who is sitting to

13   Ms. Smallman's right, and to no one else.  When I say report

14   that communication to anyone else, I mean that you should not

15   tell anyone, including your fellow jurors.  Just my staff.

16        To minimize the probability of any improper

17   communications, it is important that you go straight to the

18   jury room when you come in in the morning.  Ms. Smallman

19   probably already explained how to do that, how to get to the

20   jury room.  But if not, or if you want to be sure you know,

21   make sure before you leave today that you ask her for further

22   instructions on that, so you know how to get there.  Again, you

23   are not coming in the front door of the courtroom any longer.

24   You are going to go straight to the jury room.  And you will

25   wait there until Ms. Smallman comes to get you for trial.

1          It is important that you go straight there, that you

2    remain in the jury room for the duration of the trial day, and

3    you head directly out of the courthouse at the end of the trial

4    day.  You should use the bathrooms that are in the jury suite

5    over there.  You may not use the cafeterias in the courthouse

6    and you should not linger in any public areas of the courthouse

7    on this floor or elsewhere.  That is to ensure you don't run

8    into anyone in the case.

9          Fifth, do not do any research or any investigation

10   about the case or about anyone who has anything to do with the

11   case on your own.  Don't go visit any place described in the

12   trial, don't read or listen to or watch any news reports about

13   the case, as I said.  Don't go on the internet or use whatever

14   communications device it is you use to see what you can learn

15   to inform yourself about this matter.

16         That is because, as I've said, your decision in this

17   case must be based solely on the evidence presented at the

18   trial.  In other words, all that you need to know will be

19   presented here in open court by the parties.

20         I expect you to inform me immediately through

21   Ms. Smallman or Mr. Miller if you become aware of another

22   juror's violation of these instructions.

23         Finally, and we're almost done, each of you I think

24   was given a notebook.  Excellent.  That is because I do permit

25   jurors to take notes.  You do not have to take notes.  Some

1   jurors find it helpful to take notes as a way of listening and

2   remembering.  Other jurors prefer just to listen.  Whatever

3   your personal style is, that's what you may do.  That is to say

4   you don't have to take notes, but you may.  Notes are just an

5   aid to your own recollection.  The court reporters in this

6   case, you've seen them working throughout the day, they are

7   recording everything that is said during the trial.  And any

8   portion of the testimony can be submitted to you during your

9   deliberations in this case.

10          If you do take notes, be aware that note taking may

11  distract you from something important that is happening on the

12  witness stand.

13          Whether or not you take notes, you should rely on your

14  own recollections and don't be influenced by the fact that

15  another juror has taken notes.  If you do take notes, or

16  regardless, your notebooks must be left in the jury room each

17  day, so don't leave them in the courtroom even when we are on a

18  break.  The notebooks should go with you.  So when you're here,

19  bring them out.  When you go back to the jury room, bring them

20  back to the jury room, and leave them there during breaks and

21  overnight.  My staff will make sure that they are secure.

22          From this point until the time that you retire to

23  deliberate, it is your duty not to discuss this case and not to

24  remain in the presence of anyone who may be discussing this

25  case.  In that regard, I remind you that the parties, the

1    lawyers, everyone involved in this case has been strictly

2    instructed not to have any contact with you.  So if you happen

3    to see any of them outside the courtroom and they don't

4    acknowledge you, don't be insulted.  They are not being rude.

5    They are begin simply following my instructions.

6           That concludes my preliminary instructions to you.

7    Because we have been going quite a while today, as I told you

8    before, we will not do anything more today.  Instead, we'll

9    start promptly and freshly tomorrow when you'll hear the

10   lawyers' opening statements, and then we will proceed with the

11   first witness.

12          So, with that let me give you a reminder you will be

13   hearing a lot in the coming days.  Number one, don't discuss

14   the case with each other, your bosses, your colleagues, anyone.

15   Again, I don't mean to sound like a broken record, but it is

16   important, especially in the beginning, to make sure that all

17   this sinks in.  You may tell people you have been selected as

18   jurors in a federal criminal case.  Don't tell them what the

19   case is about.  Don't tell them the name of the case.  Don't

20   tell them anything except for that.  And to the extent that you

21   want to share with your family or employers that I expect the

22   trial will last no longer than about a week, maybe a little bit

23   into next week, you may share that.  But don't share anything

24   beyond that.

25          Don't discuss the case, don't do any research about

1    the case, keep an open mind.  You've heard absolutely no

2    evidence in this case whatsoever, so it is critical you keep an

3    open mind until you've heard all of the evidence and it is time

4    to begin your deliberations.

5            With that, and with the reminder you should be in the

6    jury room by 8:45 tomorrow, and knock on wood, fingers crossed,

7    whatever it might be, that breakfast is there for you at that

8    time.  We will get started at 9 o'clock if everybody is here

9    and ready to go.

10           And with that, I wish you safe travels home and have a

11   good evening, get some rest, and we'll be ready to go tomorrow

12   morning.

13           Thank you very much.

14           (Jury excused)

15           THE COURT:  All right.  Anything from the government?

16           MR. DENTON:  Just one thing, your Honor, with respect

17   to tomorrow.  Our second witness will be Special Agent Spivack

18   who is going to be the witness through whom we introduce the

19   actual CSAM exhibits we discussed at the final pretrial

20   conference.

21           Two things about that to note.  First, we've been

22   talking with Ms. Smallman.  I think arranging to show the

23   exhibits only to the parties in front of the bar may require a

24   little more manual movement than we had thought.  But I think

25   we are going to see who is in the courtroom at the time and

1   otherwise figure it out as best we can.

2           Second, we have prepared redacted versions of the

3   three images as the Court directed.  Mr. Bradley will be

4   putting on Special Agent Spivack and has them available, if the

5   Court and defense counsel wanted to take a look at them.  We

6   can do that now, we can do that tomorrow, but they are

7   available at everyone's convenience.

8           MR. De CASTRO:  I saw them this morning.  I have no

9   objections to the redactions.

10          THE COURT:  I'm willing to trust your collective

11  judgments so we should be good to go.

12          My understanding is yes, we'll need to manually shut

13  off the monitor for the public area of the courtroom if anyone

14  is present.  If no one other than government or court personnel

15  is present, maybe it's not necessary.  But, so we'll need to

16  pause at the relevant moment for Ms. Smallman to take care that

17  was.

18          MR. DENTON:  The monitors that are on tables are

19  visible notwithstanding the privacy screens, but they have

20  power buttons and we know how to work them.

21          THE COURT:  And we might be able to shut those off

22  because the issue is the public monitor and the jury monitor

23  are on the same control.  So I think the only way to sever them

24  is to manually shut off the public one.  But I think we can

25  shut down the attorney ones, if that's appropriate.

1    MR. DENTON:  Understood, your Honor.  We'll work it

2    out.

3    THE COURT:  If you can discuss the choreography with

4    each other and maybe with Ms. Smallman in the morning, that

5    would be helpful.

6    Any estimate on how long the directs are for each of

7    the witnesses, since there are only three, just so I know how

8    quickly we're likely to get through all this?

9    MR. DENTON:  I think we are thinking under an hour for

10   Special Agent Evanchec, probably a little more than an hour for

11   Special Agent Spivack, and then probably three to four hours

12   for Mr. Berger.

13   THE COURT:  So, certainly sounds like you are not

14   likely to rest your case tomorrow, but Wednesday is not

15   inconceivable, depending on the length of cross.

16   MR. DENTON:  I think that's right, your Honor.

17   THE COURT:  As I think the government knows, I would

18   like you through trial to be coordinating conferring on what

19   exhibits have been admitted and to provide a running exhibit

20   list updated to reflect that.  That also ensures that everybody

21   is on the same page with respect to what's in evidence, and

22   that can also be swiftly collected at the conclusion of the

23   case so we just ask you to do that.

24   And what else?  One or two limiting instructions that

25   you are supposed to be communicating about.  One just what, if

1    anything, I should say with respect to the images generally;

2    and number two, with respect to the child erotica materials.

3    So, I would hope and expect you can agree on the appropriate

4    language and when I should give that instruction.  But, if not,

5    I'll need to resolve the disagreements.  So the sooner you can

6    bring that to my attention, the better.  And it sounds like no

7    later than first thing tomorrow morning.  So if you've agreed

8    on something and you can file it on the docket, all the better,

9    so everybody's on the same page there.

10            MR. DENTON:  We'll confer about that, your Honor.

11   Mr. Bradley has confirmed that the first of the actual images

12   that will be shown is the one that is child erotica, so it may

13   make sense to put them together and do it all at once.  But

14   we'll confer and come up with something for the Court.

15            THE COURT:  Great.  Anything else from the government?

16            MR. DENTON:  No, your Honor.

17            THE COURT:  Mr. De Castro?

18            MR. De CASTRO:  No, Judge.  Thank you.

19            THE COURT:  All right.  So, somewhat long day, but

20   thank you for your patience and cooperation.  As I think you

21   know, I wouldn't think that we'll have anything to discuss

22   tomorrow morning first thing, unless there is anything with

23   respect to the limiting instructions.  But if anything comes

24   up, just alert my staff and we'll take that up at or even a few

25   minutes before 9 if we can.  And my hope is to get started with

1  opening statements as close to 9 as possible.

2          In aid of that, if you guys want to use the podium

3  there, you're welcome to move the moveable podium to the front

4  of the jury box, if you wish just set that up before we're

5  ready to go so we're set.

6          All right.  Thank you very much.  Have a good evening

7  and I will see you tomorrow morning.

8          MR. DENTON:  Thank you, your Honor.

9          (Adjourned until September 12, 2023, at 9 a.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25